USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: DEC 2 1 2012

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CYI, INC.,

                Plaintiff,

    -v-

JA-RU, INC., ET AL,

                Defendants.
------------------------------------------------------------X

12 Civ. 2230 (AJN)

OPINION

ALISON J. NATHAN, District Judge:

## I. BACKGROUND

Plaintiff CYI, Inc. ("CYI") filed this action on March 26, 2012 against Defendants Ja-Ru, Inc. ("Ja-Ru US"), Michaels Stores, Inc. ("Michaels"), and Michaels Stores Procurement Company, Inc. ("MSPC"). On June 4, 2012, Defendants moved to transfer this action to the United States District Court for the United States District Court for the Middle District of Florida. On August 13, 2012, CYI amended its Complaint to, *inter alia*, add an additional Defendant, Ja-Ru (HK), Ltd. ("Ja-Ru HK"), and to accuse an additional design of the packaging of infringement. The Court allowed the parties to submit supplemental letter briefing to address the impact of the amendment on the motion to transfer. For the reasons stated herein the Court GRANTS the Motion to Transfer.

The Amended Complaint alleges that in 2010 and in 2011, CYI developed and began marketing two toy rockets with distinctive appearance and packaging. (Am. Compl. ¶¶ 15-25). CYI brings a number of claims against the Defendants connected with the Defendants marketing of two rocket toys beginning in approximately March 2012 that CYI, in essence, contends are

1

confusingly similar to the toys that it has marketed. (Am. Compl. ¶¶ 33-40, 48-56). CYI asserts claims for infringement of trade dress (Counts I & II); indirect and contributory infringement of trade dress (Counts III & IV); federal unfair competition grounded in passing-off and unprivileged imitation (Counts V & VI); and state law claims for unfair competition, intent to deveive, deceptive acts and practices, and tortious interference with business relationships (Counts VII, VIII, IX).

## II. ANALYSIS

A motion to transfer involves two inquiries: (1) whether the action could have been brought in the proposed transferee district, in this case the Middle District of Florida, and (2) whether transfer is warranted for the convenience of the parties and witnesses, in the interest of justice. *See* 28 U.S.C. § 1404(a); *New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010); *Herbert v. Elec. Arts, Inc.*, 325 F. Supp. 2d 282, 285 (S.D.N.Y. 2004). The party seeking to transfer a case carriers the burden of making out a strong case for transfer, and courts evaluate such motions under a clear and convincing evidence standard in determining whether to exercise discretion to grant a transfer motion. *New York Marine & Gen. Ins. Co.*, 599 F.3d at 113-14.

Here, the parties do not dispute that this case could have been brought in the Middle District of Florida (Def. Mot. at 9-10; Pls. Opp. at 8). The question before the Court is, therefore, whether transfer is appropriate under the circumstances. Courts considering this question have examined a number of factors including (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative

means of the parties; (8) the comparative familiarity of each district with the governing law; and (9) judicial economic and the interests of justice. *Id.* at 112; *Tomjai Enters., Corp. v. Laboratorie Pharmaplus U.S.A., Inc.*, 2012 U.S. Dist. LEXIS 107033, at *12-20 (S.D.N.Y. July 29, 2012).

### A. Locus of Operative Facts

"The locus of operative facts is a primary factor in determining whether to transfer venue." *Tomjai Enters.*, 2012 U.S. Dist. LEXIS 107033, at *17 (quotation marks omitted); *Am. S.S. Owners Mut. Prot. & Indem. Ass'n v. Lafarge N. Am., Inc.*, 474 F. Supp. 2d 474, 485 (S.D.N.Y. 2007) (looking to the location of the "center of gravity" in the case in assessing this factor).

An oft-repeated rule in cases of trademark infringement, dilution, or unfair competition, is that the locus of operative facts is the initially chosen forum if acts of infringement, dilution, or unfair competition occurred in that forum. *Tomjai Enters.*, 2012 U.S. Dist. LEXIS 107033, at *17; *ESPN, Inc. v. Quiksilver*, Inc., 581 F. Supp. 2d 542, 549 (S.D.N.Y. 2008) (collecting cases and noting that "an argument regarding where alleged infringing trademarks were developed, designed, marketed or sold is simply not germane in regard to the locus of operative facts"); *NBA Props., Inc. v. Salvino, Inc.*, 2000 U.S. Dist. LEXIS 3799, at *9-11 (S.D.N.Y. Mar. 27, 2000). Courts following this rule have suggested that the location of consumer confusion is reflective of the locus of operative facts in such cases. *See Ontel Prods. v. Project Strategies Corp.*, 899 F. Supp. 1144, 1154 (S.D.N.Y. 1995); *cf. French Transit v. Modern Coupon Sys.*, 858 F. Supp. 22, 25 (S.D.N.Y. 1994) ("In trademark infringement claims, the actionable wrong takes place both where infringing labels are affixed to the goods and where confusion of purchasers is likely to occur."). Here, Defendants concede there have been sales in New York and CYI has purchased

3

at least one accused product in this district. (Selevan Aug. 23 Decl. ¶ 9; *see also* Tsui-Tip Decl. ¶¶ 2-9).

Defendants urge the Court that the claims in this action are, at core, for infringement of trade dress and that the above rule is wholly inapplicable. (Mot. at 16). Instead, they argue, infringement of trade dress is more akin to infringement of a design patent or a copyright, in which the operative facts relate to the design, development, and production of an infringing product. (Mot. at 16); *cf. AEC One Stop Group, Inc. v. CD Listening Bar, Inc.*, 326 F. Supp. 2d 525, 530 (S.D.N.Y. 2004) (explaining, in copyright case, that "[t]he operative facts in infringement cases usually relate to the design, development and production of an infringing product" but also that for unfair competition, the locus of operative facts is the initial forum if that is where the acts of unfair competition occur); *Invivo Research v. Magnetic Resonance Equip. Corp.*, 119 F. Supp. 2d 433, 439-40 (S.D.N.Y. 2000). Defendants also point to *Mola, Inc. v. Kacey Enters., LLC*, 2011 U.S. Dist. LEXIS 93040, at *22-23 (W.D.N.Y. Aug. 21, 2011), a trade dress case in which the court held the locus of operative facts was that of the design, development, and production of the allegedly infringing product. Thus, according to Defendants, this factor favors transfer of the action to the Middle District of Florida, where these acts occurred. (Selevan May 31, 2012 Decl. ¶¶ 10; Selevan Aug. 23, 2012 Decl. ¶ 5).

The Court does not agree that, as a general matter, an action for trade dress infringement is more akin to an action for design patent or copyright infringement than an action for trademark infringement. In order to prove trade dress infringement, a plaintiff must show (1) that the mark is distinctive as to the source of the good; (2) that there is a likelihood of confusion between its good and the defendants; and (3) that the matter sought to be protected is not functional. *Maharishi Hardy Blechman Ltd. v. Abercrombie & Fitch Co.*, 292 F. Supp. 2d 535, 541

(S.D.N.Y. 2003); *O Zon Inc. v. Charles*, 272 F. Supp. 2d 307, 313 (S.D.N.Y. 2003). As such, the inquiry in trade dress infringement cases is similar in a number of respects to the inquiry in trademark infringement cases. *ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 154 (2d Cir. 2007) ("To succeed on a section 43(a)(1)(A) claim, a plaintiff must prove (1) that the mark or dress is distinctive as to the source of the good or service at issue, and (2) that there is the likelihood of confusion between the plaintiff's good or service and that of the defendant.") Indeed, although distinct claims, trademark and trade dress infringement are governed by the same statutory provisions, 15 U.S.C. § 1125, *see Louis Vuitton Malletier v. Dooney & Bourke*, Inc., 454 F.3d 108, 116 (2d Cir. 2006), and the likelihood of confusion factors and distinctiveness are analyzed similarly in trademark and trade dress cases, *see Natural Organics, Inc. v. Nutraceutical Corp.*, 426 F.3d 576, 578 (2d Cir. 2005); *Nora Bevs., Inc. v. Perrier Group of Am. Inc.*, 164 F.3d 736, 743, 745 (2d Cir. 1998); *Fun-Damental Too v. Gemmy Indus. Corp.*, 111 F.3d 993, 1002-03 (2d Cir. 1997); *O Zon Inc.*, 272 F. Supp. 2d at 313-14; *Maharishi Hardy Blechman*, 292 F. Supp. 2d at 541-43. These considerations favor treating claims for infringement of trade dress similarly to claims for trademark infringement.

The question remains, however, whether the above rule—that the locus of operative facts is found in a plaintiff's initially chosen forum so long as there have been any sales in that forum—is appropriate on the facts of this case. In particular, in cases where sales have occurred in multiple districts, courts have reached disparate results as to where the locus of operative facts lies. Here, Defendants point out that sales of the accused products and packaging are not limited to New York, and sales in New York by Ja-Ru US and Ja-Ru HK account for only six percent of the accused products to companies in the United States. (Selevan Aug. 23 Decl. ¶ 9).

Although a number of Courts have held that the initially chosen forum is the locus of operative facts if there have been sales in that district, even in cases in which sales of an allegedly infringing product have been made in other districts, *see ESPN*, 581 F. Supp. 2d at 549; *It's a 10, Inc. v. pH Beauty Labs, Inc.*, 718 F. Supp. 2d 332, 337 (S.D.N.Y. 2010); *Student Advantage, Inc. v. International Student Exch. Cards, Inc.*, 2000 U.S. Dist. LEXIS 13138, at *21-23 (S.D.N.Y. Sept. 12, 2000), other cases have held in such circumstances that mere in-district sales are not sufficient to justify a finding that the locus of operative facts is in the initially chosen forum, *see Mola*, 2011 U.S. Dist. LEXIS 93040, at *22-23 (holding that where a party's products are sold in many states, "sales alone are insufficient to establish a material connection to the forum and to override other factors favoring transfer" (quotation marks omitted)); *Hilti Aktiengesellschaft v. Milwaukee Elec. Tool Corp.*, 2004 U.S. Dist. LEXIS 16373, at *18-20 (E.D.N.Y. July 19, 2004) ("Where the plaintiff has selected venue that bears at best a de minimis relation to the subject of the suit, it should not be heard to complain that another district with a similarly minimal connection on the same grounds is inappropriate."). Moreover, the parties have not cited binding authority requiring the Court to conclude that in-district sales of an allegedly infringing product, standing alone, require a finding that this district is the locus of operative facts despite sales in other districts. Neither has the Court located such controlling authority through its independent research.

On balance, the Court concludes that those cases holding that the initially chosen forum is the locus of operative facts if there have been sales in that district, notwithstanding sales outside the district, are not persuasive. Considering the question that the locus of operative facts is directed toward—the degree of relationship between the forum and the cause of action—if there are roughly equivalent sales of an allegedly infringing product in multiple districts, each

6

such district has a roughly equivalent claim to being the locus of operative facts. Indeed, in this context, such a rule would conflate two of the factors the Court is to consider: the Court's assessment of the locus of operative facts would largely be subsumed by the Plaintiff's choice of forum.

Moreover, the Court concludes that the design and development of the allegedly infringing products is not wholly irrelevant on the facts of this case. For example, proof of bad faith creates a presumption of likelihood of confusion. *Paddington Corp. v. Attiki Importers & Distribs., Inc.*, 996 F.2d 577, 586-87 (2d Cir. 1993). Moreover, in this case CYI has alleged willfulness (*e.g.*, Am. Compl. ¶¶ 40, 44), which will presumably turn, in large part, on facts regarding the design and development of the accused products and packaging and the knowledge of the employees involved in that process. Likewise, the inquiry into functionality may also relate to the design of the accused product and packaging. *See Cartier, Inc. v. Sardell Jewelry, Inc.*, 294 Fed. Appx. 615, 620-21 (2d Cir. Sept. 8, 2008) (unpublished); *Maharishi Hardy Blechman*, 292 F. Supp. 2d at 542-43. As such, it appears that at least some of the operative facts in this case occurred in Florida. *See St. Paul Fire & Marine Ins. Co. v. Novus Int'l, Inc.*, 2011 U.S. Dist. LEXIS 150317, at *10 (S.D.N.Y. Dec. 28, 2011) ("It therefore cannot be said that the operative facts occurred exclusively in the Eastern District of Missouri, which weighs against transferring the case."); *Pilevesky v. SunTrust Bank*, 2010 U.S. Dist. LEXIS 124308, at *10-11 (E.D.N.Y. Nov. 22, 2010) (explaining that because there were relevant facts and evidence in more than one district, the locus of operative facts weighed only slightly in favor of transfer, if at all); *Herbert*, 325 F. Supp. 2d 282, 289 (S.D.N.Y. 2004).

Neither party has presented evidence as to the amount of sales made by Michaels, whether in New York or otherwise, or the sales by Ja-Ru US or Ja-Ru HK in Florida.[1] As such, the evidence before the Court on the amount of sales in this district suggests only that a relatively minimal number of sales occurred here: only six percent of the sales by Ja-Ru US and Ja-Ru HK in the United States are to New York as a whole, let alone the Southern District of New York in particular. (Selevan Aug. 23 Decl. ¶ 9). Although the evidence before the Court is relatively sparse, it suggests there is only a minimal connection to this forum, and provides little reason to retain the action here. In contrast, the evidence relating to the design and development of the accused product and packaging suggests that these events uniformly occurred in the Middle District of Florida.

Thus, the Court concludes that the locus of operative facts either tips slightly in favor of transferring of this case to the Middle District of Florida or is neutral, depending on how much weight is given to the sales data provided and the facts relating to the design and development of the accused products. Because the other factors in this case sufficiently favor transfer of the matter, the Court need not conclusively resolve this question.

**B. Plaintiffs' Choice of Forum**

A plaintiffs' choice of forum is entitled to considerable weight and is generally not disturbed unless the balance of the factors strongly favors the motion to transfer. *See Tomjai Enters.*, 2012 U.S. Dist. LEXIS 107033, at *13-14; *Am. S.S. Owners Mut. Prot. & Indem. Ass'n.*, 474 F. Supp. 2d at 486. Defendants contend that Plaintiffs' choice of forum is entitled to little

---

[1] Defendants have noted that the accused products and packaging "were sold at the retail level within the Middle District of Florida by Michaels Stores" but do not reveal the proportion of such sales. (Def. Mot. at 17, see also Def. Mot. at 4). Plaintiffs note that there are more Michaels Stores in this district than the Middle District of Florida. (Pls. Opp. at 7). None of this, however, provides the Court with any clear basis to conclude that sales in New York are anything but minimal.

weight because it is not their home forum nor the place where the operative facts of the action occurred. *See Tomjai Enters.*, 2012 U.S. Dist. LEXIS 107033, at *14; *Pilevesky*, 2010 U.S. Dist. LEXIS 124308, at *13-14. The Court agrees, based in large part on the above analysis regarding the locus of operative facts, and concludes that Plaintiff's choice of forum is entitled to little weight in considering the motion to transfer.

### C. Convenience of the Witnesses

The convenience of the witnesses has been held to be the most important factor in considering whether to transfer a case under § 1404(a). *Pilevesky*, 2010 U.S. Dist. LEXIS 124308, at * 6; *Herbert*, 325 F. Supp. 2d at 286. The Court weighs more heavily the convenience of non-party witnesses than party witnesses in conducting this analysis. *MASTR Asset Backed Sec. Trust 2007-WMC1 v. WMC Mortg. LLC*, 2012 U.S. Dist. LEXIS 104707, at *6-7 (S.D.N.Y. July 19, 2012); *Pilevesky*, 2010 U.S. Dist. LEXIS 124308, *8 (collecting cases). As a rule, a party seeking a transfer must provide the Court with a specific list of the probable witnesses who will be inconvenienced if required to testify in the present forum. *Kiss My Face Corp. v. Bunting*, 2003 U.S. Dist. LEXIS 17096, at *5-6 (S.D.N.Y. Sept. 29, 2003) (finding this factor weighed against transfer because the defendant failed to demonstrate which witnesses would be inconvenienced absent transfer); *NBA Props.*, 2000 U.S. Dist. LEXIS 3799, at *14. The Court is to assess not just the number of witnesses, but also the materiality of their proposed testimony to the action. *See AEC One Stop Group*, 326 F. Supp. 2d at 529; *Herbert*, 325 F. Supp. 2d at 286.

Defendants argue that that this factor tips decidedly in favor of transferring this action to the Middle District of Florida because, they contend, the material witnesses in this action are

found in that district. In particular, Defendants point to the following individuals as knowledgeable regarding issues that may arise during this litigation and are located in Florida: (1)Russell Selevan, Angela Ku, and Stephen Hearon are knowledgeable about the design and development of the accused products and packaging, and other products, and the catalog featuring the accused products and packaging (Selevan May 31, 2012 Decl. ¶¶ 13-15, 19); (2) Jason Lubin, Andrew Selevan, and Russell Selevan are knowledgeable about meetings with MSPC regarding the accused products and packaging (Selevan May 31, 2012 Decl.Decl. ¶ 16); (3) Danny Bergman, Dennis Wit, Jason Lubin, and Will Oldhan are knowledgeable regarding sale of the accused products and packaging (Selevan May 31, 2012 Decl.Decl. ¶ 18); and (4) Jack Selevan, Andrew Selevan, David Cook, and Bruce Conner are knowledgeable about bookkeeping and accounting issues related to the accused products and packaging (Selevan May 31, 2012 Decl.Decl. ¶ 20).[2]

Defendants also argue that several of these witnesses, although employed by Ja-Ru US, may be considered non-party witnesses because they are not officers of the Defendants. *See In re an Order Quashing*, 182 F.R.D. 56, 62 n.4 (S.D.N.Y. 1998); *see also Herbert*, 325 F. Supp. 2d at 290 (noting that courts have reached differing conclusions on whether to consider non-officer employees party witnesses). Defendants have not indicated, however, that these witnesses would be unwilling to testify without a subpoena, even if a subpoena were required. *See MASTR Asset Backed Sec. Trust*, 2012 U.S. Dist. LEXIS 104707, at *7-8 (S.D.N.Y. July 19,

---

[2] Defendants also note certain witnesses in Hong Kong. (Selevan Decl. ¶¶ 17, 22-23). They further note that witnesses for Michaels are located in Texas (Falkner Decl. ¶ 6-7), that these witnesses would therefore be required to travel regardless of whether the matter is transferred to Florida, and that Michaels also moves to transfer. (Mot. at 13). CYI contends that Defendants have ignored the convenience to these witnesses or parties. Although the Court agrees that there is little evidence that it would be substantially more convenient for these witnesses to travel to Jacksonville, Florida rather than New York City, Plaintiff has not shown any substantial inconvenience to them due to the transfer.

2012); *Herbert*, 325 F. Supp. 2d at 290. Moreover, because the Court concludes that this factor favors transfer regardless of whether these witnesses are considered party or non-party witnesses, answering this particular question is not necessary.

CYI counters that it intends to call witnesses located in New York, and argues that there are a large number of retailers in New York and the surrounding area who sell CYI's product and "have information pertaining to customer confusion, secondary meaning, and/or distinctiveness." (Opp. at 4; *see also* Tsui-Yip Sept. 4, 2012 Ltr. at 2). It is not clear, however, what testimony CYI intends to proffer from these Plaintiffs—for example, without evidence that these retailers have sold or have otherwise encountered the *accused* products and packaging, it is not clear how they could shed light on consumer confusion, and CYI has not explained this position. Nor, beyond a bare assertion that they may be called as witnesses, has CYI indicated what relevant evidence or knowledge these corporations or individuals possess as to secondary meaning or distinctiveness. At best, the Court can speculate that retailers may possess evidence of, for example, actual confusion. *See Ptak Bros. Jewelry, Inc. v. Ptak*, 2007 U.S. Dist. LEXIS 39283, at *20-21 (S.D.N.Y. May 29, 2007); *cf. Sunenblick v. Harrell*, 895 F. Supp. 616, 630-31 (S.D.N.Y. 1995). Moreover, CYI has also pointed out that there are larger numbers of Michaels stores in New York that may, potentially, have information on the accused products and packaging. (Opp. at 7. *But see* Falkner Decl. ¶ 7).

CYI also contends that it is, as a general matter, more convenient to travel to New York City than Jacksonville, Florida, given the number of major airports in close proximity to New York City. *Cf. Erick Van Egeraat Associated Architects B.V. v. NBBJ LLC*, 2009 U.S. Dist. LEXIS 42385, at *14-15 (S.D.N.Y. Apr. 27, 2009); *Dyson, Inc. v. Maytag Corp.*, 2006 U.S. Dist. LEXIS 73540, at *5-6 (S.D.N.Y. Oct. 11, 2006). This consideration does, as a general matter,

suggest that New York City may be a more convenient forum to travel to, but does not address the convenience of a transfer to the numerous witnesses that Defendants have identified in Florida.

The Court concludes that this factor favors transfer to the Middle District of Florida. Of the witnesses that have been specifically identified and for whom the Court can assess the likely materiality of their testimony, Florida is the more convenient forum. However, at least as to CYI's case in chief, it is not unreasonable to conclude that the retailers CYI has identified may have some relevant evidence on customer confusion or the distinctiveness of CYI's product and packaging. Likewise, there does not appear to be a real dispute that New York City is at least marginally easier to travel to based on the number of airports servicing the region.[3] However, these arguments do not negate the convenience that would, on balance, be gained by transfer of this action.

### D. Location of Relevant Documents and Ease of Access to Sources of Proof

The Court concludes that this factor favors transfer because the documents and tangible evidence that Ja-Ru US and Ja-Ru HK are likely to produce in this matter is found or is most easily accessible in the Middle District of Florida (Selevan May 31, 2012 Decl. ¶ 23; Selevan Aug. 23, 2012 Decl. ¶ 12), and no party contends it has documents or other tangible evidence in New York. (Falkner Decl. ¶ 8) Thus, even if other documents are located elsewhere—such as Texas or California—there is at least some benefit to transferring this case to allow access to such documents and evidence. Moreover, Defendants point out that, as the accused infringers, they are likely to produce the bulk of the relevant evidence in this case. *See Tomjai Enters*, 2012

---

[3] Both sides argue that one or more of their officers travel frequently to their preferred districts (Opp. at 3-4; Selevan Aug. 23, 2012 Decl. ¶ 11).

U.S. Dist. LEXIS 107033, at *15-16; *ESPN*, 581 F. Supp. 2d at 548-49; *AEC One Stop Group*, 326 F. Supp. 2d at 530. However, as many courts have held, this factor is entitled to relatively little weight in the modern era of "faxing, scanning, and emailing documents." *Am. S.S. Owners Mut. Prot. & Indem. Ass'n*, 474 F. Supp. 2d at 484; *see also ESPN*, 581 F. Supp. 2d at 549. This factor favors transfer, but not strongly. *See Herbert*, 325 F. Supp. 2d at 289.

### E. Convenience of the Parties

Ja-Ru US is a Florida corporation with principal place of business in Florida. (Selevan May 31, 2012 Decl. ¶ 1) Ja-Ru HK is an affiliate of Ja-Ru US, located in Hong Kong. (Selevan May 31, 2012 Decl. ¶ 5; Selevan Aug. 23 Decl. ¶ 2). Neither has any offices, showrooms, officers, employees, or business records in New York. (Selevan May 31, 2012 Decl. ¶ 3-4; Selevan Aug. 23 Decl. ¶ 3-4). Michaels and MSPC are Delaware corporations, with principal places of business in Texas. (Falkner Decl. ¶¶ 2-3). MSPC is a procurement company which has bought products, including at least one of the two accused products, for resale by Michaels in retail stores throughout the United States, including stores in New York and Florida. (Falkner Decl. ¶¶ 2-3). CYI is a California corporation, with principal place of business in California. (Clemente Decl. ¶ 3). The Court notes that, to the extent that CYI argues that Florida is not a convenient forum for Michaels or MSPC, these parties join in the motion to transfer and, as such, are allowed to waive their inconvenience. *See Ontel Prods.*, 899 F. Supp. at 1154.

Based on the above, the Court concludes that the Middle District of Florida is likely the most convenient forum for the parties, and is certainly more convenient than the Southern District of New York, given their respective locations. However, "the convenience of the parties is often connected to the convenience of their respective witnesses." *ESPN*, 581 F. Supp. 2d at 549-50. Thus, although it finds this factor tips in favor of transfer, the Court notes that it does

not consider again at this stage the convenience to the various witnesses that Defendants have identified as relevant to this analysis.

### F. Availability of Process

Defendants argue that this factor favors transfer of this action to Florida because at least some of the employees listed above are non-officer employees who may not be subject to the subpoena power of this Court. (Mtn. at 14-15). However, Defendants have not made any representation that these employees are, in fact, unwilling to testify in New York should the case remain here, and this contention is, therefore, entitled to little weight. *See MASTR Asset Backed Sec. Trust*, 2012 U.S. Dist. LEXIS 104707, at *7-8; *Pilevesky*, 2010 U.S. Dist. LEXIS 124308, at *12; *Herbert*, 325 F. Supp. 2d at 290; *Kiss My Face*, 2003 U.S. Dist. LEXIS 17096, at *11-12. To the extent the Court is willing to surmise that some witnesses may be unwilling to do so, a similar inference arises as to CYI's witnesses who may be located in New York. This factor, therefore, is neutral.

### G. Relative Means of the Parties

Neither party has presented evidence on the relative means of the parties, *i.e.*, whether one party has greater financial means to bear the burdens of litigating in a forum not of its choosing. *See, e.g.*, *Mola*, 2011 U.S. Dist. LEXIS 93040, at *23; *Am. S.S. Owners Mut. Prot. & Indem. Ass'n*, 474 F. Supp. 2d at 485-86; *Herbert*, 325 F. Supp. 2d at 290. Rather, they simply reiterate their arguments regarding the convenience of their preferred forums and the expense of litigating elsewhere. (Mot. at 20; Opp. at 16-17). This factor is, therefore, neutral.

### H. Familiarity With Governing Law

The Court agrees with Defendants that the Middle District of Florida is equally competent to hear CYI's federal claims in this action as the Southern District of New York. *See*

*AEC One Stop Group*, 326 F. Supp. 2d at 531; *Am. Eagle Outfitters, Inc. v. Tala Bros. Corp.*, 457 F. Supp. 2d 474, 479 (S.D.N.Y. 2006). In particular, the relative number of trademark cases filed in this district versus the Middle District of Florida does not demonstrate that the Eleventh Circuit does not have a well-developed body of trademark and trade dress law. However, the equal competence of these courts on the federal claims is, at best, a neutral factor in whether to transfer the case. Moreover, as CYI points out, they have raised numerous New York state law causes of action, which favors retaining the action in the Southern District of New York. *See ESPN*, 581 F. Supp. 2d at 550-51; *NBA Props.*, 2000 U.S. Dist. LEXIS 3799, at *26 ("Where, as here, there are state law claims, the 'forum's familiarity with governing law' supports retention of the action."). This factor weighs against transfer, albeit not heavily. *See ESPN*, 581 F. Supp. 2d at 550-51 (noting that this is one of the least important factors); *AEC One Stop Group*, 326 F. Supp. 2d at 531 (S.D.N.Y. 2004).

### I. Trial Efficiency and Interests of Justice

The parties' arguments regarding trial efficiency and the interests of justice are essentially reiterations of the points discussed above, which the Court will not reiterate here.

### III. CONCLUSION

The Court, having considered the relevant factors, finds that transfer of this matter to the Middle District of Florida is appropriate. The connection of this matter to New York appears to be at best marginal. Indeed, the Court cannot discern any significant connection of this litigation to the Southern District of New York that is not the result of CYI's decision to litigate here, rather than elsewhere: there is no record evidence of substantial sales in the district as compared to elsewhere, no clear indication that witnesses with unique knowledge in or near the district, and no party has its home in the district. *Cf. Invivo Research*, 119 F. Supp. 2d at 438-39 (granting

motion to transfer where "the sole connection between th[e] action and the Southern District of New York [was] the sale of a minute percentage of the accused products and the location of plaintiff's counsel" which gave the selection of the forum an "artificial quality"). In contrast, there are substantial connections to the Middle District of Florida through at least the numerous witnesses that Defendants have identified, as well as the presence of at least Ja-Ru US in that district. The remaining factors are of little weight, are neutral or are duplicative, and therefore do not add substantially to the Court's analysis. On the whole, the Court concludes that this case is ripe for transfer to the Middle District of Florida and GRANTS Defendants' motion.

Dated: December 21, 2012
       New York, New York

_____
ALISON J. NATHAN
United States District Judge